IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 16, 2005 Session

## WILLIAM DORNING, Sheriff of Lawrence County, Tennessee v. AMETRA BAILEY, County Mayor of Lawrence County, Tennessee

Direct Apeal from the Circuit Court for Lawrence County
No. CC-1446-03    Donald Harris, Judge

---

### No. M2004-02392-COA-R3-CV

---

The Sheriff of Lawrence County filed an application in the circuit court pursuant to section 8-20-101 *et seq.* of the Tennessee Code seeking, among other things, funding for new vehicles, an additional administrative assistant for his investigators, two additional corrections officers for his jail, and increased salaries for his employees.  The trial court granted the sheriff additional funding for these items.  Regarding the salary increases, the trial court ordered that they be retroactive to the beginning of the prior fiscal year.  The county appealed the trial court's decision regarding the aforementioned items to this Court.  We reverse in part and affirm in part the decisions of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part as Modified; Reversed in Part**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

William M. Harris, Lawrenceburg, TN, for Appellant

John S. Coley, III, Columbia, TN, for Appellee

**OPINION**

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**


For fiscal year 2003–2004, the County Commission of Lawrence County appropriated $7.8 million for the general fund. Of that amount, approximately $1.3 million, which equates to 17.2 percent of the overall general fund, was allocated to fund the Lawrence County Sheriff's Department.

On September 23, 2003, William Dorning, Sheriff of Lawrence County (hereinafter "Sheriff Dorning" or "Appellee"), filed a petition against Ametra Bailey, County Mayor for Lawrence County (hereinafter the "County" or "Appellant") in the Circuit Court of Lawrence County pursuant to section 8-20-101 *et seq.* of the Tennessee Code.[1] Therein, Sheriff Dorning alleged the following:

> 2.  Sheriff Dorning requested Lawrence County appropriate funds for eighteen (18) new vehicles, hiring an additional administrative assistant, hiring two (2) additional corrections officers for the Lawrence County Jail, hiring four (4) additional deputies, and salary increases for all previously funded and approved positions.
>
> 3.  Lawrence County refused, passing a budget on August 26, 2003 which did not include the funding sought by Sheriff Dorning.
>
> 4.  Pursuant to T.C.A. § 8-24-103(a)(1), Lawrence County is required to make the necessary appropriation and pay to Sheriff Dorning the authorized expenses fixed by law for the operation of his office.
>
> 5.  Pursuant to T.C.A. § 8-20-120, Lawrence County is required to "fund the operations of the county sheriff's department."
>
> 6.  Despite devoting all his working time to the operation of his office, Sheriff Dorning is unable to properly and efficiently conduct the affairs and transact the business of the Lawrence County Sheriff's Office as presently funded and appropriated pursuant to the budget passed on August 26, 2003. Sheriff Dorning, his deputies and his assistants are unable to effectively discharge their statutory and ex-officio duties under said budget.

---

[1] The sheriff is required to name the county executive as the party defendant to his petition. Tenn. Code Ann. § 8-20-102 (2002).

7. Under the present budget, Sheriff Dorning continues to lose qualified deputies to better-paying jobs across Lawrence County, Tennessee, and the country.

8. Sheriff Dorning asks the Court to order Lawrence County to appropriate and pay to his office funds sufficient to accomplish the following:

   a) Purchase and equip eighteen (18) new vehicles for $541,200;

   b) Hire an additional clerical assistant for a total of five (5);

   c) Hire two (2) additional corrections officers for the jail for a total of eleven (11);

   d) Hire two (2) additional deputies for a total of twenty-four (24);

   e) Hire two (2) additional deputy lieutenants for a total of six (6);

   f) Increase salary ranges for the positions below as indicated:

      i) Administrative assistant $20,632 – $28,067;

      ii) Corrections officer $21,424 – $26,243;

      iii) Deputy $27,243 – $33,231;

      iv) Deputy sergeant $30,493 – $37,685;

      v) Jail supervisor $27,882 – $36,397;

      vi) Deputy lieutenant $30,209 – $37,284;

      vii) Deputy captain $37,387 – $44,576;

      viii) Chief deputy $40,111 – $57,256

Sheriff Dorning requested that the circuit court enter an order directing the County to appropriate these funds to his department. The County answered Sheriff Dorning's petition and raised as an affirmative defense the petition's failure to state a claim upon which relief could be granted. Specifically, the County asserted that Sheriff Dorning did not have the statutory authority to petition the circuit court for certain items set forth in his petition.

In November of 2003, at a regularly scheduled meeting of the County Commission of Lawrence County, the commissioners unanimously passed a resolution directing that county funds could no longer be used to pay for cell phone service effective January 1, 2004. (T.R. Vol. 1, p. 19). In response, Sheriff Dorning filed an application for a temporary restraining order on December 31, 2003 seeking to prevent the County from cancelling the cellular phone service for his department, which the circuit court granted.

On January 13, 2004, Sheriff Dorning filed a motion seeking to amend his petition to allege the following:

> 2.     Since [the filing of the original petition], Lawrence County has failed and/or refused to pay the Sheriff's Department employees their overtime for 2003.
>
> 3.     On December 31, 2003, Lawrence County attempted to cancel the cellular phone contract between Verizon Wireless and the Sheriff's Department. A Temporary Restraining Order was entered on December 31, 2003, which kept the cellular phones up an [sic] running for an additional 15 days or until a full hearing could be held. The cellular phones were previously included in the budget for the Sheriff's Department passed by the County.
>
> 4.     The Sheriff now anticipates that the County will try to pass a new budget resolution prohibiting him from using any budgetary funds for cellular phones.
>
> 5.     The refusal of the County to voluntarily fund cellular phones and the necessary vehicles as previously set forth in the original complaint is a violation of the County governing body's responsibilities under T.C.A. § 8-20-120, and the Sheriff seeks a *writ of mandamus* to compel the appropriation of the necessary monies for the vehicles and cellular phones. Additionally, the Sheriff seeks a court order under T.C.A. § 8-20-120 requiring the County to pay his employees for their overtime during the year 2003.

In response, the County filed a motion asking the circuit court to partially dismiss some of the claims contained in Sheriff Dorning's amended complaint. Specifically, the County maintained that, "while the aforesaid statutes are clear as to the Sheriff's authority to bring proceedings to establish his need for additional personnel and compel funding for said personnel, it is equally clear that these statutes do not provide any authority by which the Sheriff may maintain any other cause of action compelling additional funding."

On February 13, 2004, the circuit court held a hearing on the County's motion. Thereafter, the circuit court entered an order denying the County's motion for partial dismissal and granting Sheriff Dorning's motion to amend his petition. The circuit court held a trial in the matter on July 30 and 31, 2004. On August 20, 2004, the learned trial judge entered a memorandum opinion setting forth his reasons for partially granting Sheriff Dorning's petition. On September 3, 2004, the circuit court entered a final order in this case, ruling as follows:

> 1.     That Lawrence County fund the base salaries of the following employees of Sheriff Dorning, effective July 1, 2003, as follows:
>
>                Administrative assistants: $20,000

-4-

Corrections officers: $21,500
Jail supervisor: $27,500
Deputy: $27,000
Deputy sergeant: $29,700
Deputy lieutenant: $30,375
Deputy captain: $37,000
Chief deputy: $40,700

2. That Lawrence County fund the Sheriff's Department to increase the above base salaries pertaining to administrative assistants, deputies, deputy sergeants and deputy lieutenants by five (5%) percent for each year of time in service with a satisfactory evaluation up to five (5) years retroactive to the beginning of the 2004 fiscal year. Further, that Lawrence County fund the Sheriff's Department to increase the above base salaries pertaining to jail supervisor, deputy captain and chief deputy by five (5%) percent for each year of time in grade with a satisfactory evaluation up to five years retroactive to the beginning of the 2004 fiscal year.[2]

3. That Lawrence County fund the Sheriff to hire two (2) additional corrections officers, along with one additional administrative assistant, at the above pay levels, retroactive to July 1, 2003.

4. That Lawrence County fund the Sheriff to purchase one (1) additional new patrol vehicle for the 2004 fiscal year, as well as one new patrol unit for each vehicle currently in the Sheriff's fleet when such vehicle's odometer reading exceeds 150,000 miles.

5. That the cellular phone contract shall not be funded.

6. That Lawrence County must, within thirty (30) days of the entry of this Decree, declare in a filing with the Court whether it intends to either (a) pay the Sheriff's Department employees the $32,955.00 in unpaid overtime from 2003 along with the $37,780.00 in unpaid overtime for 2004 **or** (b) fund the Sheriff's Department to hire (1) additional deputy and one (1) additional deputy lieutenant to serve as replacement for deputies when they take the compensatory time off that they are owed both for the current and future overtime owed.

---

[2] The circuit court subsequently entered an order clarifying this paragraph in its order as follows: "Each employee shall receive his/her base salary plus 5% for each year of time in service (or in grade if a jail supervisor, deputy captain, and chief deputy) *as of July 1, 2003*, with no increase in salary upon accruing an additional year in service or in grade." (emphasis in original).

-5-

The County subsequently filed a timely notice of appeal to this Court.[3]

## II.
### ISSUES PRESENTED FOR REVIEW

The County presents the following issues for our review:

1. Whether the trial court erred in awarding Sheriff Dorning two additional corrections officers and one additional administrative clerk;
2. Whether the trial court erred in awarding Sheriff Dorning salary increases for personnel within his department;
3. Whether the trial court erred in making the salary increases retroactive to July 1, 2003; and
4. Whether the trial court erred in awarding Sheriff Dorning vehicles for his department.

For the reasons set forth more fully herein, we affirm in part and reverse in part the decisions of the trial court.

## III.
### STANDARD OF REVIEW

In resolving the issues presented in this appeal, we employ the following standard of review:

> In this case we are asked to decide questions involving the proper construction of Tennessee Code Annotated section 8-20-101, *et. seq.*, addressing the application for authority to employ deputies and assistants in the office of the clerks and masters of the chancery courts. Issues of statutory construction are pure questions of law. *See Lipscomb v. Doe*, 32 S.W.3d 840, 843-44 (Tenn. 2000) (citing *Wakefield v. Crawley*, 6 S.W.3d 442, 445 (Tenn. 1999); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999)). Thus, our review of the lower court's construction of Tennessee Code Annotated section 8-20-101 *et. seq.*, is de novo without any presumption of correctness. *See id.* (citing *Lavin v. Jordan*, 16 S.W.3d 362, 364 (Tenn. 2000), *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999)). However, in reviewing the trial court's findings of fact, we accord those factual findings a "presumption of correctness, which is overcome only when the

---

[3] "Either party dissatisfied with the decree or order of the court in the proceedings set out above is given the right of appeal as in other cases." Tenn. Code Ann. § 8-20-106 (2002).

preponderance of the evidence is contrary to the trial court's findings of fact." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001).

*Boarman v. Jaynes*, 109 S.W.3d 286, 289–90 (Tenn. 2003).

## IV.
### ANALYSIS

The office of sheriff is created by the Tennessee Constitution. *See* Tenn. Const. art. 7, § 1. "The constitution, however, does not fix or prescribe the duties of the office or deal with employment of personnel." *Shelby County Civil Serv. Merit Bd. v. Lively*, 692 S.W.2d 15, 16 (Tenn. 1985); *see also Smith v. Plummer*, 834 S.W.2d 311, 313 (Tenn. Ct. App. 1992). A sheriff's duties were originally defined by the common law, *Smith*, 834 S.W.2d at 313 (citing *State ex rel. Thompson v. Reichman*, 188 S.W. 225 (Tenn. 1916)), however, many of a sheriff's common law duties have been subsumed into statutes enacted by the legislature, *George v. Harlan*, No. 01A01-9712-CV-00692, 1998 Tenn. App. LEXIS 657, at *8 (Tenn. Ct. App. Sept. 30,1998) (no perm. app. filed). As we have previously noted:

> The statutory duties of a sheriff now include four classes: (1) serving process, T.C.A. § 8-8-201(1)(4-32); (2) attending the courts, T.C.A. §§ 5-7-108, 8-8-201(2), 16-15-601, 37-1-213; (3) operating the jail, T.C.A. §§ 8-8-201(3), 8-8-221, 41-2-108, 41-4-101; (4) keeping the peace, T.C.A. §§ 8-8-213, 38-3-102.
> The duties of a sheriff may be classified according to the manner of his compensation therefor, to wit: (1) duties imposed and defined by statute with statutory compensation, and (2) common law or "ex officio" duties (even though now provided by statute) for which duties there is no specified fee or charge. *State ex rel, Windham v. LaFever*, Tenn. 1972, 486 S.W.2d 740.
> The compensation of a sheriff for ex officio services is to be determined by the county legislative body. *Shanks v. Hawkins*, 160 Tenn. 148, 22 S.W.2d 355 (1929); T.C.A. § 8-24-111.

*Smith*, 834 S.W.2d at 313–14.

"Preparing the county budget is essentially a political process intended to reflect the desires of the county's residents." *Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *5 (Tenn. Ct. App. May 5, 1989) (no perm. app. filed); *see also Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003); *Easterly v. Harmon*, No. 01A01-9609-CH-00446, 1997 Tenn. App. LEXIS 820, at *10 (Tenn. Ct. App. Nov. 19, 1997) (perm. app. denied May 26, 1998). "Thus, even though it has prescribed the budgetary procedures counties are required to follow, the General Assembly has left the decisions concerning the priorities and expenditure levels to the county legislative bodies with assistance from their county executives and the various local department and agency heads." *Jones*, 1989 Tenn.

App. LEXIS 325, at *5 (footnote omitted); *see also* Tenn. Code Ann. § 5-12-101 *et seq.* (2005) ("County Budgeting Law of 1957"); Tenn. Code Ann. § 5-12-201 *et seq.* (2005) ("Local Option Budgeting Law of 1993").

In 1921, the legislature enacted comprehensive legislation know as the Anti-Fee Bill. *See* 1921 Tenn. Pub. Acts ch. 101. We have explained the history surrounding the enactment of the Anti-Fee Bill in the following terms:

> There was little fiscal coordination among local officials in Tennessee until the early part of the twentieth century. Prior to that time, many local officials were outside the county budget process because they funded their agencies with fees collected for their services. The General Assembly did not favor this system, and after four unsuccessful attempts, abolished it in 1921. *See* Act of April 6, 1921, ch. 101, 1921 Tenn. Pub. Acts 188. Thereafter, the fees were treated as local revenue, the salaries of the local officials were set by statute, and the local agencies' budgets were set by the local legislative bodies.
>
> Many local officials affected by the "anti-fee bill" were popularly elected in their own right. They were not supervised by the county executives, and since they had the same elective mandate as the members of the county legislative body, they were reluctant to surrender any portion of their independence to other county officials. Independence fosters budget disagreements. Accordingly, the General Assembly found it necessary to include a dispute resolution procedure in the "anti-fee bill."

*Jones*, 1989 Tenn. App. LEXIS 325, at *6–7 (footnotes omitted); *see also White v. Davidson County*, 360 S.W.2d 15, 18 (Tenn. 1962); *Pyrdum v. Benefield*, 1985 Tenn. App. LEXIS 2782, at *6 (Tenn. Ct. App. Mar. 29, 1985) (no perm. app. filed). "By enacting this law, the legislature was able to provide uniformity in the compensation paid to numerous local elected officials." *Reid v. Anderson*, No. 84-57-II, 1985 Tenn. App. LEXIS 2776, at *8 (Tenn. Ct. App. Mar. 27, 1985) (no perm. app. filed). "However, even in doing so, the Legislature recognized that it was not in a position to make all employment and salary decisions involving local government employees." *Pyrdum*, 1985 Tenn. App. LEXIS 2782, at *6. The legislature lacked the ability to foresee the staffing requirements of the various sheriff's departments throughout the state. *Id.* at *6–7; *Reid*, 1985 Tenn. App. LEXIS 2776, at *9. Thus, as part of the Anti-Fee Bill, the legislature enacted section 8-20-101 *et seq.* of the Tennessee Code.

Section 8-20-101 of the Tennessee Code provides, in relevant part, as follows:

> (a) Where any one (1) of the clerks and masters of the chancery courts, the county clerks and the clerks of the probate,

criminal, circuit and special courts, county trustees, registers of deeds, and sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such deputies and assistants as may be actually necessary to the proper conducting of such person's office in the following manner and under the following conditions, namely:

. . . .

(2) The sheriff may in like manner make application to the judge of the circuit court in the sheriff's county, for deputies and assistants, showing the necessity therefor, the number required and the salary that should be paid each; provided, that in the counties where criminal courts are established, the sheriff may apply to a judge of such criminal court[.]

Tenn. Code Ann. § 8-20-101(a) (2002). Pursuant to this dispute resolution provision, "the judiciary is brought into the budgetary fray only in limited circumstances." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003). Now, when the county legislative body denies a sheriff's request for additional funding for his or her department, it is common practice for the sheriff to file an application under section 8-20-101(a)(2) of the Tennessee Code. *Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *7–8 (Tenn. Ct. App. May 5, 1989) (no perm. app. filed). However, "[t]he authority of the courts to authorize expense of conducting the conduct of a sheriff's office is limited to those activities related to the performance of statutory duties for which the collection of a fee is authorized." *Smith v. Plummer*, 834 S.W.2d 311, 314 (Tenn. 1992); *see also Easterly v. Harmon*, No. 01A01-9609-CH-00446, 1997 Tenn. App. LEXIS 820, at *11 (Tenn. Ct. App. Nov. 19, 1997) (perm. app. denied May 26, 1998). "The determination of the value of the sheriff's ex officio services is particularly within the knowledge of the county legislative body." *Jones*, 1989 Tenn. App. LEXIS 325, at *14 (citing *Shanks v. Hawkins County*, 22 S.W.2d 355, 356 (Tenn. 1929)). "Accordingly, Tenn. Code Ann. § 8-24-111 (1988)[4] gives the county legislative body complete control over the budget for the sheriff's ex officio services." *Id.* (footnote omitted).

Moreover, the legislature provided as follows:

Notwithstanding any other provision of the law to the contrary, county governing bodies shall fund the operations of the county sheriff's department. The sheriff may appoint such personnel

---

[4] This statute provides as follows: "The county legislative bodies of the different counties shall, at their first session in each and every year, make such allowance as they, in their discretion, think sufficient to compensate their sheriffs for ex officio service." Tenn. Code Ann. § 8-24-111 (2002).

as may be provided for in the budget adopted for such department. No county governing body shall adopt a budget absent the consent of the sheriff, which reduces below current levels the salaries and number of employees in the sheriff's department. In the event a county governing body fails to budget any salary expenditure which is a necessity for the discharge of the statutorily mandated duties of the sheriff, the sheriff may seek a writ of mandamus to compel such appropriation.

Tenn. Code Ann. § 8-20-120 (2002). We have previously interpreted this provision to mean that, should a court determine it necessary for the county legislative body to appropriate additional funds for the sheriff's department and the legislative body refuses, the sheriff may seek a writ of mandamus[5] to compel it to comply with the court's order. *Jones*, 1989 Tenn. App. LEXIS 325, at \*8–9; *see also George v. Harlan*, No. 01A01-9712-CV-00692, 1998 Tenn. App. LEXIS 657, at \*9 (Tenn. Ct. App. Sept. 30, 1998) (no perm. app. filed) ("Circuit Court has jurisdiction to authorize employment and pay of assistants needed by the sheriff to perform his statutory duties, and appropriation of necessary expenses thereof is enforceable by mandamus.")). Thus, in operation, the statutory scheme enacted by the legislature limits a court's ability to award additional funding to a sheriff as follows:

> We should construe Tenn. Code Ann. §§ 8-20-101(2) and 8-20-120 harmoniously with Tenn. Code Ann. § 8-24-111. When read together, these statutes stand for the proposition that sheriffs can invoke the procedures in Tenn. Code Ann. § 8-20-101(2) only with regard to the personnel needed to perform the statutory duties for which the statutes provide a fee. Thus, in considering a Tenn. Code Ann. § 8-20-101(2) application for increased personnel-related expenditures, the courts may consider only those requests that are related to statutory duties for which the sheriff collects a fee.

*Jones*, 1989 Tenn. App. LEXIS 325, at \*14–15 (footnote omitted).

"For over sixty years now, the courts have been cast in the role of reluctant arbiters of the budget disputes between certain local officials and their county government." *Jones*, 1989 Tenn. App. LEXIS 325, at \*7. While the appellate courts of this state have repeatedly questioned the wisdom of interjecting the judiciary into essentially political disputes, *see Pyrdum*, 1985 Tenn. App. LEXIS 2782, at \*7; *Reid*, 1985 Tenn. App. LEXIS 2776, at \*9, our supreme court has upheld the validity of the system promulgated by the legislature, *Shelby County Civil Serv. Merit Bd. v. Lively*, 692 S.W.2d 15, 17 (Tenn. 1985). Accordingly, we will begin our review of the trial court's decisions under the statutory scheme enacted by the legislature.

---

[5] "It is well settled that a writ of mandamus may properly be issued to compel a public official to perform a non-discretionary duty." *State ex rel. Ledbetter v. Duncan*, 702 S.W.2d 163, 165 (Tenn. 1985).

### A.
### Additional Personnel

In its memorandum opinion, the circuit court determined that, consistent with section 8-20-101 *et seq.* of the Tennessee Code, its authority extended to providing Sheriff Dorning with adequate support personnel. To that end, the trial court stated that "[t]he court is of the opinion the sheriff has proven by a preponderance of the evidence the need for two additional corrections officers and an administrative assistant and his petition with regard to these three additional personnel should be granted." The County does not contest the authority of the circuit court to determine a sheriff's need for additional assistants. Instead, the County argues that the evidence presented at trial preponderates against an award of additional personnel in this case.

Regarding the burden of proof required in cases of this nature, our supreme court has stated as follows:

> The office holder must demonstrate: (1) an inability to discharge the duties of a particular office by devoting his or her entire working time thereto; and, (2) the office holder must petition the court and show the necessity for assistants, the number of assistants required, and the salary each should be paid.

*Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (footnote omitted). "In order for the sheriff to prevail, he must present detailed evidence that has the cumulative effect of showing that the work he is required to perform by law cannot be done with existing manpower." *Reid v. Anderson*, No. 84-57-II, 1985 Tenn. App. LEXIS 2776, *4 (Tenn. Ct. App. Mar. 27, 1985) (no perm. app. filed) (citing *Cunningham v. Moore County*, 604 S.W.2d 866, 868 (Tenn. Ct. App. 1980)). "Once the necessity of employing assistants is established, the appropriate trial court is empowered to determine the number of assistants needed and their salaries." *Boarman*, 109 S.W.3d at 291.

We begin with the trial court's award of two additional corrections officers to Sheriff Dorning. "The Sheriff has a statutory duty to operate the jail for which he is authorized to charge and collect fees. Consequently, the Trial Court has authority to approve the expenditure of such fees for necessary expense of doing so, including personnel." *Smith v. Plummer*, 834 S.W.2d 311, 314 (Tenn. Ct. App. 1992); *see also Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *19–20 (Tenn. Ct. App. May 5, 1989) (no perm. app. filed). Regarding the need for additional corrections officers, Sheriff Dorning's chief deputy testified as follows:

> Q.    What about the additional corrections officers requested for the jail? Why is that necessary?
> A.    At this point we're using the correctional officers to assist us in transports from the jail—transports from the jail to the hospital, transports from the hospital to the mental health facility, and things of that sort.

Q. When you say you're asking them to assist, you're asking them to actually drive prisoners to the hospital or some other facility?

A. Yes, sir.

Q. And is that normal? Is that part of their normal duties?

A. We have extended that to part of their normal duties at this point.

Q. Except for being short handed, would that be a part of their normal duties?

A. No, sir.

Q. Let me ask you this. When you have someone sick or someone who doesn't show up for work for whatever — emergency — what have you been doing to — who fills in for them?

A. As far as the correctional officer?

Q. Right.

A. Normally we will pull an officer off the road to fill that position.

Q. Pull a deputy in.

A. Yes, sir.

Q. To take the place of a correctional officer.

A. Yes, sir.

Q. Will two additional correction officers solve that problem?

A. We hope that that would be the case, yes, sir.

Q. You've only got a 34-bed jail, so why would it take that many correctional officers to take care of 34 people?

A. We're actually running in excess of 70 inmates.

Q. How big is your jail[?]

A. Thirty-four beds.

Q. How do you sleep 70 people in a 34-bed jail?

A. We actually use mats and place them on the floor. We're using our drunk tanks or holding tanks to house inmates, as well.

The County argues that Sheriff Dorning failed to prove his need for additional corrections officers with the specificity required by the statute. We conclude that the evidence regarding the need for additional corrections officers does not preponderate against the trial court's ruling on this issue.

Next, we turn to the trial court's award of an administrative assistant to Sheriff Dorning. Regarding the need for an additional administrative assistant, Sheriff Dorning's chief deputy testified as follows:

-12-

Q. The sheriff has asked for an additional clerical assistant. Do you not have enough clerical assistants to process the paper work?

A. No, sir; not at this point.

Q. Is it arrest reports or what is it that they're getting done?

A. We have various reports in case files that are not being processed by different units within our department.

Q. Would one clerical assistant support person do that — handle that?

A. I feel like it would take up a lot of the slack in that area; yes, sir.

Q. What is the end result at the present time without this clerical assistant to take up the slack?

A. We have a backlog of reports and case files that are not being prepared.

Q. At all?

A. Yes, sir; or actually the officers are having to take extra time in order to prepare those files.

Q. Is that comp time or is that time that they simply are not devoting to their other responsibilities?

A. That's time that they're not devoting to their responsibilities.

. . . .

Q. You said you're requesting an additional clerical position.

A. Yes, sir.

Q. Where would that clerical assistant go?

A. This assistant would probably be assigned to the investigative unit.

Q. To do paperwork — to do the reports for the investigators, is that correct?

A. Yes, sir.

Q. And you say presently they're writing up their own reports — doing their own reports.

A. Yes, sir.

Q. Is that not something that all officers do; they write up their own reports, and then they're submitted to the department for being put into the TIBRS system?

A. Yes, sir.

Q. So you would have a clerk that was doing something for the investigators —

A. Yes, sir.

Q. — that is not being provided for the regular deputies.

-13-

A. Basically, we have a records clerk that maintains the overall records within the department. We have four investigators assigned to do various activities, and they have a greater case load per number, actually, than the deputies would.

THE COURT: They would continue to write up their reports?

THE WITNESS: Yes, sir.

THE COURT: What is the clerk doing?

THE WITNESS: She would actually be or would be creating the case files and documentation for the investigative section, as well as victim services type things for the domestic violence officer.

Q. But the officers — the lieutenants or the investigators — they would still have to continue to write up their own reports.

A. Yes, sir.

. . . .

A. They would actually assist the investigator in maintaining a case file, therefore, giving the investigator more time to do their duties.

Q. In their case files, you mean just kind of keeping up with — keeping the filing system up — doing that type of work.

A. Yes, sir.

Q. But not necessarily a records clerk, as such.

A. No, sir.

The County asserts that, "as there is no statutory authority which provided the trial court the ability to grant the Sheriff additional criminal investigators, it stands to reason that the trial court was without the authority to grant an additional administrative clerk whose duties are strictly contained to assisting criminal investigators."

"We do not read Tenn. Code Ann. §§ 8-20-101(2) and 8-20-120 so narrowly that they cannot apply to personnel *required to support the personnel who are performing the statutory duties*. The courts may approve the cost of support personnel when they are required." *Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *16–17 (Tenn. Ct. App. May 5, 1989) (citing *State ex rel. Doty v. Styke*, 199 S.W.2d 468, 476 (Tenn. Ct. App. 1946) (emphasis added)). "The precise identification of the activities of the various assistants as statutory duties and 'ex officio duties' is difficult, if not impossible." *George v. Harlan*, No. 01A01-9712-CV-00692, 1998 Tenn. App. LEXIS 657, at *9 (Tenn. Ct. App. Sept. 30, 1998) (no perm. app. filed).

At trial, the chief deputy stated that the administrative assistant would be assigned to the department's investigative unit. "While [a sheriff] does not have the duty to ferret out crime, he has the duty to investigate reports that a crime has been committed or is about to be committed." *Jones*, 1989 Tenn. App. LEXIS 325, at *19 (citing *State ex rel. Thompson v. Reichman*, 188 S.W. 225,

231 (Tenn. 1916)). "Detectives serve this purpose." *Id.* However, we have previously noted the absence of a statute requiring a sheriff to employee criminal investigators. *See Smith v. Plummer*, 834 S.W.2d 311, 314 (Tenn. Ct. App. 1992); *Jones*, 1989 Tenn. App. LEXIS 325, at *19 ("We have been unable to find a statute authorizing sheriffs to charge a fee for providing detective services.").[6] That being so, we have held that a sheriff's criminal investigators are performing ex officio duties. *See Jones*, 1989 Tenn. App. LEXIS 325, at *19. Accordingly, "the budget for these services is within the discretion of the county legislative body in accordance with Tenn. Code Ann. § 8-24-111." *Id.* It stands to reason that, if a sheriff cannot rely on section 8-20-101 of the Tennessee Code to compel the funding of a criminal investigator, he cannot rely on that provision to compel the funding of support personnel to aid a criminal investigator in the performance of his or her duties. Accordingly, we reverse the trial court's award of an administrative assistant to Sheriff Dorning.

## B.
### Salary Increases

Section 8-20-102 of the Tennessee Code provides as follows: "The court may allow or disallow the application, either in whole or in part, . . . and may allow the salaries set out in the application or smaller salaries, all as the facts justify." Tenn. Code Ann. § 8-20-102 (2002). The County contends that the evidence proffered at trial preponderates against the trial court's award of salary increases to various employees of Sheriff Dorning's department. Specifically, the County asserts that the record contains no evidence proving that Sheriff Dorning cannot fulfill his statutory duties with the salaries presently paid to his employees. In fact, the County points to evidence in the record tending to prove that Sheriff Dorning was able to perform his statutory duties with his employees being paid at the current salary levels set by the County.

The only limitation currently placed upon the trial courts when adjudicating a sheriff's application for salary increases is that the salary increase awarded by the trial court must be supported by the proof. *See* Tenn. Code Ann. § 8-20-102 (2002).[7] In seeking to prove the need for

---

[6] As we discuss more fully *infra*, in 2005, the legislature amended section 8-8-213 of the Tennessee Code to provide that a sheriff has a statutory duty to "detect and prevent crime." *See* 2005-1 Tenn. Code Ann. Adv. Legis. Serv. 200 (LexisNexis). In the same act, the legislature amended section 38-3-102 of the Tennessee Code to provide that a sheriff has they statutory duty to "ferret out crimes." *Id.* Since the present case was decided in 2004, these amendments have no bearing on the present case. *See Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998) ("Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise.").

Even if these amendments were applicable to the present case and could be construed as statutory authority for requiring a sheriff to employ investigators, we could not authorize funding for such investigators or support personnel to assist them as the sheriff is not permitted to recover a fee for providing such service. *See* Tenn. Code Ann. § 8-21-901 (2002). Therefore, such service remains an ex officio service provided by the sheriff over which the county legislative body retains complete budgetary authority. *See* Tenn. Code Ann. § 8-24-111 (2002).

[7] A previous version of the statute restricted the salaries of field deputies to $550.00 per month. *See Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *28–29 (Tenn. Ct. App. May 5, 1989), *reh'g granted*, 1989 Tenn. App. LEXIS 402, at *1 (Tenn. Ct. App. June 2, 1989) (no perm. app. filed) (noting the legislature's removal of the ceiling contained in the previous version of the statute)); *Reid v. Anderson*, No. 84-57-II, 1985 Tenn. App. LEXIS 2776, at *6–14 (Tenn. (continued...)

salary increases, Sheriff Dorning presented the testimony of seventeen (17) former employees who testified that, by and large, they left the sheriff's department seeking better paying jobs, both in and out of law enforcement. Sheriff Dorning also presented the testimony of the chief deputies of Maury County and Giles County, which neighbor Lawrence County. The chief deputies testified concerning salary ranges for various employees of the sheriff's department in their respective counties. After hearing this proof, the trial court, in its memorandum opinion, stated as follows:

> A parade of very bright and competent former Sheriff Department employees were presented, each relating how they were forced to leave the Sheriff's employ because of poor pay and lack of benefits. The pay offered by Lawrence County to deputy sheriffs not only fails to compete with the private sector but fails to compete with other governmental law enforcement agencies in the area. Many deputies do not have health insurance coverage for their families because of the cost of the coverage and their inability to pay that cost and support their families on the amount they are paid.

The County did not offer any evidence to contradict the evidence presented by Sheriff Dorning.

Regarding the proof necessary for warranting an increase in the salary of certain employees pursuant to section 8-20-101 of the Tennessee Code, we have stated:

> As long as the trial courts are going to be asked to review and act upon requests for salary increases or decreases pursuant to Tenn. Code Ann. § 8-20-101 *et seq.*, it is incumbent upon the parties to present to the trial court all the information upon which a proper salary decision can be made. Without limitation, this information could include budgeted and anticipated revenue increases or decreases, the county's present and proposed operating budget, salary increases or decreases being granted to other county employees, the ability of the sheriff to hire and retain qualified employees at the presently authorized salary, and changes in the cost of living as well as changes in the cost of providing other non-salary employee benefits.

*Reid v. Anderson*, No. 84-57-II, 1985 Tenn. App. LEXIS 2776, at *14 (Tenn. Ct. App. Mar. 27, 1985) (no perm. app. filed). We cannot say that the evidence presented at trial preponderates against the trial court's authorization of salary increases to Sheriff Dorning's employees.

---

[7](...continued)
Ct. App. Mar. 27, 1985) (no perm. app. filed).

However, based on the aforementioned discussion regarding the authorization for funding of an administrative assistant, we must modify the trial court's order insofar as it sought to create the position of administrative assistant to assist the criminal investigators and set the salary for that position. Thus, the trial court's order is modified by striking any reference to the additional administrative assistant and any accompanying salary.

## C.
### Retroactivity of Salary Increases

In its final order, the trial court made the salary increases for certain employees of Sheriff Dorning's department retroactive to the beginning of the 2003–2004 fiscal year, or July 1, 2003. The parties subsequently filed a motion asking the trial court for clarification regarding this ruling. In response, the trial court entered a supplemental order directing that "[e]ach employee shall receive his/her base salary plus 5% for each year of time in service (or in grade if a jail supervisor, deputy captain, and chief deputy) *as of July 1, 2003*, with no increase in salary upon accruing an additional year in service or in grade."  (emphasis in original).

Relying on our holding in **Roberts v. Lowe**, No. 03A01-9610-CC-00333, 1997 Tenn. App. LEXIS 256 (Tenn. Ct. App. Apr. 16, 1997) (no perm. app. filed), the County argues that the trial court's decision to award retroactive salary increases constitutes clear error. In *Roberts*, the trial court entered an order on June 3, 1996 authorizing the Sheriff to hire additional personnel, and the court awarded salary increases to all of the sheriff's existing employees retroactive to January 1, 1996. *Id.* at *1–2. In holding that the trial court's actions constituted error, we held as follows:

> T.C.A. § 8-20-101, *et seq.* (1993 & Supp. 1996), contains no provision for an award of retroactive raises, nor has Roberts cited any authority in his brief to support the trial court's action. We therefore conclude that the trial court abused its discretion in making the salaries effective retroactively.
> For the foregoing reasons, so much of the trial court's judgment as pertains to the effective date of the new salaries for the various positions is modified to reflect that they are effective June 3, 1996, the date of the trial court's judgment.

*Id.* at *16–17.

In response to the authority cited by the County, Sheriff Dorning points to this Court's decision in **Dulaney v. McKamey**, 856 S.W.2d 144 (Tenn. Ct. App. 1992). In *Dulaney*, the trial court authorized the Clerk and Master of Sullivan County to employ part-time assistants, and the court authorized a salary increase for the clerk's deputy retroactive to July 1, 1991. *Id.* at 145. This Court, without further comment on the retroactivity of the salary increase, affirmed the judgment of the trial court in all respects. *Id.* at 147.

Our own independent research has revealed another instance when this Court has addressed the issue of retroactive payments under the statutes at issue. In *Woods v. Smith*, No. 02A01-9111-CV-00261, 1992 Tenn. App. LEXIS 585, at *2 (Tenn. Ct. App. July 2, 1992) (no perm. app. filed), the Sheriff of Henderson County determined that he needed three additional deputies. Without seeking the approval of the county commission, the sheriff proceeded to hire three additional deputies and to pay them with funds previously budgeted to his department. *Id.* When the sheriff's budget was almost depleted, he brought suit against the county seeking authorization to hire and pay the three additional deputies. *Id.* at *3. The trial court determined that the sheriff had proven the necessity for the three additional deputies he hired, and the court ordered the county to appropriate $35,000.00 to the sheriff's budget to cover the department's expenses for the remainder of the fiscal year. *Id.* at *3. On appeal, the county argued that the trial court erred in ordering the county to, in essence, pay the deputies, who the sheriff hired prior to filing a petition, retroactively to the date of the petition. *Id.* at *3–4. We concluded that the sheriff "was not authorized to petition the Circuit Court at Henderson County for funds to pay the three additional deputies retroactively that he had hired eight months prior to filing the petition." *Id.* at *5. In turn, we remanded the case to the circuit court for a "determination of the amount of prospective salary to which the Sheriff was entitled which would enable him to pay the three deputies for the remainder of the fiscal year of 1991." *Id.* at *8.

Nowhere in section 8-20-101 *et seq.* of the Tennessee Code do we find express legislative authorization for the courts of this state to award retroactive salary increases to the employees of the departments coming within the purview of the statutes. It is left to the legislative branch of government to set the policy for this state. *Cary v. Cary*, 937 S.W.2d 777, 781 (Tenn. 1996); *Cavender v. Hewitt*, 239 S.W. 767, 768 (Tenn. 1921). "When the legislature has declared, by law, the public policy of the State, the judicial department must remain silent, and if a modification or change in such policy is desired, the lawmaking department must be applied to, and not the judiciary, whose function is to declare the law but not to make it." *Fields v. Metro. Life Ins. Co.*, 249 S.W. 798, 800 (Tenn. 1922). We agree with our prior holdings in *Roberts v. Lowe* and *Woods v. Smith*, and we conclude that the trial court erred in awarding salary increases to Sheriff Dorning's employees retroactive to July 1, 2003. Accordingly, the trial court's order is modified to reflect that the salary increases are to become effective on September 3, 2004, the date of the trial court's order.

### D.
### *Vehicles*

Finally, the County argues that the trial court erred in instructing the County to appropriate funds for the purchase of new vehicles for Sheriff Dorning's department. In reaching its decision on this issue, the trial court made the following statement in its memorandum opinion:

> The court is further of the opinion that the duty and authority of the court to provide an adequate number of deputies for the sheriff to perform his statutory duties extends to providing . . . adequate equipment to perform those duties. It would be meaningless to

require the county to hire a number of deputies without also requiring they be adequately equipped.

The County contends that section 8-20-101 *et seq.* of the Tennessee Code does not authorize a sheriff to institute a cause of action for equipment, only for personnel and the funding of their salaries. Conversely, Sheriff Dorning argued in his brief filed on appeal that, since section 8-20-120 provides that "county governing bodies shall fund the operations of the county sheriff's department," Tenn. Code Ann. § 8-20-120 (2002), he is entitled to seek funding for vehicles.

In conducting our own independent research, we have been unable to locate any prior precedent squarely addressing the issue of whether a sheriff may bring an action under section 8-20-101 *et seq.* of the Tennessee Code for equipment, and the parties do not cite this Court to any authority in that regard. The only mention of such a cause of action is found in a footnote in our decision in *Roberts v. Lowe*, wherein we noted the following:

> The petition also sought appropriate funding for vehicles, uniforms, training, and equipment. The trial court determined, however, that its jurisdiction was limited to deciding the number of necessary employees and their salaries, and thus it declined to award additional funds for other purposes. That aspect of the judgment has not been appealed.

*Roberts*, 1997 Tenn. App. LEXIS 256, at *2 n.2. Thus, we are presented with an issue of first impression in this case.

In section 8-20-101 of the Tennessee Code, the legislature expressly provided as follows:

> (a) Where any one (1) of the . . . sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such *deputies and assistants* as may be actually necessary to the proper conducting of such person's office in the following manner and under the following conditions, namely:
>
> . . . .
>
> (2) The sheriff may in like manner make application to the judge of the circuit court in the sheriff's county, *for deputies and assistants*, showing the necessity therefor, the number required *and the salary* that should be paid each; provided, that in the counties where criminal courts are established, the sheriff may apply to a judge of such criminal court[.]

Tenn. Code Ann. § 8-20-101(a) (2002). As the County correctly notes, the statute, by its express language, applies only to a sheriff's ability to seek additional funding for personnel and their salaries. However, the legislature has also provided as follows:

> **Sheriff's departments — Funding — Salaries — Employees.** — Notwithstanding any other provision of the law to the contrary, county governing bodies *shall fund the operations of the county sheriff's department.* The sheriff may appoint such personnel as may be provided for in the budget adopted for such department. No county governing body shall adopt a budget absent the consent of the sheriff, which reduces below current levels the salaries and number of employees in the sheriff's department. In the event a county governing body fails to budget any *salary expenditure* which is *a necessity for the discharge of the statutorily mandated duties* of the sheriff, the sheriff may seek a writ of mandamus to compel such appropriation.

Tenn. Code Ann. § 8-20-120 (2002) (emphasis added).

We have previously noted that the statutory duties of a sheriff generally fall into one of four categories: (1) serving process, (2) attending to the courts, (3) operating the jail, and (4) keeping the peace. *Smith v. Plummer*, 834 S.W.2d 311, 313 (Tenn. Ct. App. 1992). Prior to 2005, a sheriff's statutory duty to keep the peace was set forth as follows:

> The sheriff and the sheriff's deputies are conservators of the peace, and may call any person, or summon the body of the county to their aid, in order to keep the peace, prevent crime, arrest any person lawfully, or to execute process of law.

Tenn. Code Ann. § 8-8-213 (2002). Regarding the sheriff's statutory duty to keep the peace, we previously noted that "the peace-keeping duties of the Sheriff do not include regular patrol of all highways." *Smith*, 834 S.W.2d at 314; *see also State ex rel. Windham v. LaFever*, 486 S.W.2d 740, 742 (Tenn. 1972); *George v. Harlan*, No. 01A01-9712-CV-00692, 1998 Tenn. App. LEXIS 657, at *9–10 (Tenn. Ct. App. Sept. 30, 1998) (no perm. app. filed); *Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *25 (Tenn. Ct. App. May 5, 1989) (no perm. app. filed). Thus, we declined to authorize funding for additional personnel to perform routine patrol of county roads.

Effective May 9, 2005, the legislature amended section 8-8-213 of the Tennessee Code as follows:

> SECTION 1. Tennessee Code Annotated, Section 8-8-213, is amended by deleting the existing language and by adding the following new subsections:

-20-

(a) The sheriff and the sheriff's deputies are conservators of the peace, and it is the sheriff's duty to suppress all affrays, riots, routs, unlawful assemblies, insurrections, or other breaches of the peace, detect and prevent crime, arrest any person lawfully, execute process of law, *and patrol the roads of the county*.

(b) *The sheriff shall furnish the necessary deputies to carry out the duties set forth in subsection (a)*, and, if necessary, may summon to the sheriff's aid as many of the inhabitants of the county as the sheriff thinks proper.

2005-1 Tenn. Code Ann. Adv. Legis. Serv. 200 (LexisNexis). At the same time, the legislature amended section 38-3-102 of the Tennessee Code to provide as follows:

(a) The sheriff is the principal conservator of the peace in the sheriff's county, and it is the sheriff's duty to suppress all affrays, riots, routs, unlawful assemblies, insurrections, or other breaches of the peace, to do which the sheriff may summon to such sheriff's aid as many of the inhabitants of the county as such sheriff thinks proper.

(b) It shall be the duty of the sheriffs in their respective counties by themselves or deputies, *to patrol the roads of the county*, to ferret out crimes, to secure evidence of crimes, and to apprehend and arrest criminals.

*Id.*; *see also* Tenn. Code Ann. § 38-3-102 (2002). The trial court entered its order in the present case on September 3, 2004, therefore, the statutory amendments are not applicable to the present case. ***Nutt v. Champion Int'l Corp.***, 980 S.W.2d 365, 368 (Tenn. 1998) ("Statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise.").

Even if the statutory amendments were applicable to the present case, they would still not produce the result urged upon this Court by Sheriff Dorning. Sheriff Dorning is correct in noting that section 8-20-120 of the Tennessee Code expressly states that "county governing bodies shall fund the operations of the county sheriff's department." Tenn. Code Ann. § 8-20-120 (2002). The statute also provides, however, that, "[i]n the event a county governing body fails to budget any *salary expenditure* which is a necessity for the discharge of the statutorily mandated duties of the sheriff, the sheriff may seek a writ of mandamus to compel such appropriation." *Id.* (emphasis added). Thus, the statute speaks only of salary expenditures, and it makes no mention of a court's authority to authorize the funding of vehicles or similar equipment.

Moreover, our supreme court has previously noted the following:

The duties of a sheriff generally fall into two categories:
(1) The duties imposed and defined by statute. The fee to be paid for performance of these duties generally is prescribed by statute.

-21-

> (2) Duties which the common law annexes to the office of
> sheriff (*some of which are now covered by statute*) *for which no fee
> or charge is specified in payment*. These duties are generally referred
> to as "ex officio" duties or services.

*State ex rel. Windham v. LaFever*, 486 S.W.2d 740, 742 (Tenn. 1972) (citations omitted).  "The authority of the courts to authorize expense of conducting the conduct of a sheriff's office is *limited to those activities related to the performance of statutory duties for which the collection of a fee is authorized*."  *Smith v. Plummer*, 834 S.W.2d 311, 314 (Tenn. Ct. App. 1992) (emphasis added).  Title 8, Chapter 21 of the Tennessee Code governs the fees that may be charged by various public officials, and it states that "[n]o officer is allowed to demand or receive fees or other compensation for any service further than is expressly provided by law."  Tenn. Code Ann. § 8-21-101 (2002).  Title 8, Chapter 21, Part 9 governs the specific fees a sheriff is authorized to collect.  Conspicuously absent from Part 9 is the authorization of a sheriff to collect a fee for performing patrol of the roads of the county.  *See* Tenn. Code Ann. § 8-21-901 (2002).  Thus, even if we were to construe section 8-20-120 of the Tennessee Code as permitting the authorization of funding for equipment, patrolling the county roads remains an ex officio service provided by the sheriff.  Therefore, the courts of this state are not permitted to authorize an expenditure for that purpose under section 8-20-101 *et seq.* of the Tennessee Code.  *See Jones*, 1989 Tenn. App. LEXIS 325, at *25 ("The sheriff's peacekeeping responsibilities are ex officio duties because he is not authorized to collect a fee for them.").  As an ex officio service provided by the sheriff, the county legislative body retains the sole discretion to fund such endeavors.  *See* Tenn. Code Ann. § 8-24-111 (2002); *Jones*, 1989 Tenn. App. LEXIS 325, at *14 ("The determination of the value of the sheriff's ex officio services is particularly within the knowledge of the county legislative body.").

We are cognizant of the fact that the sheriff has certain statutory duties for which he can collect a fee that would be furthered by the authorization to purchase new vehicles.  *See* Tenn. Code Ann. § 8-21-901(a) (2002) (setting forth the fees that a sheriff may collect for service of process, arrest and transport of prisoners, security services, and transportation of property levied upon); Tenn. Code Ann. § 8-8-201 (2002) (setting forth the duties of the office of sheriff).  Delineating between statutory activities for which a sheriff may seek authorization for additional funding and a sheriff's ex officio activities for which the county legislature may, in its discretion, provide funding can be difficult, if not impossible.  *See George v. Harlan*, No. 01A01-9712-CV-00692, 1998 Tenn. App. LEXIS 657, at *9 (Tenn. Ct. App. Sept. 30, 1998) (no perm. app. filed).  Even if we were to conclude that section 8-20-101 *et seq.* of the Tennessee Code permitted the courts of this state to authorize additional funding for equipment to be used in the performance of a sheriff's statutory duties for which he may collect a fee, the sheriff, in order to prevail, would need to present detailed evidence that has the cumulative effect of demonstrating that he is unable to perform those duties with existing equipment.  *See Reid v. Anderson*, No. 84-57-II, 1985 Tenn. App. LEXIS 2776, at *4 (Tenn. Ct. App. Mar. 27, 1985) (no perm. app. filed) (citing *Cunningham v. Moore County*, 604 S.W.2d 866, 868 (Tenn. Ct. App. 1980)).

In the present case, Sheriff Dorning has failed to carry that burden. At trial, Sheriff Dorning's chief deputy testified that, in the last four years, the County has supplied only two new vehicles to the department. Sheriff Dorning also purchased some new vehicles with proceeds from his drug-fund. The chief deputy stated that, at the time of trial, the department had forty-two (42) vehicles in its fleet after it recently sold ten (10) at auction. Of those forty-two (42) vehicles, the chief deputy testified to the following: of the twenty-eight (28) comprising the patrol fleet, sixteen (16) had an average of over 100,000 miles and twelve (12) had between 70,000 to 80,000 miles; of the fourteen (14) remaining vehicles not in the patrol fleet, they were operating in the range of approximately 60,000 miles. The chief deputy also testified concerning the high mileage on the reserve vehicles maintained by the department. He stated that, on occasion, one of the department's vehicles would break down and need to be repaired. The chief deputy noted that other state agencies do not utilize vehicles after they reach 130,000 miles. Based on this evidence, Sheriff Dorning asserts in his brief filed on appeal that he "was unable to do his job."

Testimony regarding the general condition of Sheriff Dorning's vehicle fleet does not amount to the detailed evidence required in cases of this nature. Sheriff Dorning failed to prove how the condition of his fleet adversely affected his ability to perform the statutory duties for which he may collect a fee. In fact, the proof presented at trial showed that Sheriff Dorning has never been unable to transport prisoners as needed, that his deputies have never been unable to answer the calls coming into his department, and that ninety percent (90%) of all warrants received by Sheriff Dorning had been served. Thus, even if we were to conclude that a sheriff could apply for authorization to purchase vehicles under section 8-20-101 *et seq.* of the Tennessee Code, it would be necessary for a sheriff to prove how he or she is unable, given the present state of the department's equipment, to perform the statutory duties for which he or she is permitted to collect a fee. Sheriff Dorning failed to do so in the present case.

At oral argument, counsel for Sheriff Dorning took a position which appears to be contradictory to the one set forth in the Appellee's brief by conceding that section 8-20-101 *et seq.* of the Tennessee Code does not permit a court to authorize funding for vehicles or other equipment. Instead, it was argued that Sheriff Dorning is seeking to compel funding for vehicles pursuant to a common law writ of mandamus. In support of this assertion, he relied on the language in section 8-20-120 of the Tennessee Code, stating that "county governing bodies shall fund the operations of the county sheriff's department."

"A writ of mandamus is an extraordinary remedy that may be issued where a right has been clearly established and 'there is no other plain, adequate, and complete method of obtaining the relief to which one is entitled.'" *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. ) (quoting *Meighan v. U.S. Sprint Commc'ns Co.*, 942 S.W.2d 476, 479 (Tenn. 1997)). We have previously addressed the extent to which a sheriff may seek a writ of mandamus under section 8-20-101 *et seq.* of the Tennessee Code, stating as follows:

> We disagree with the county executive's argument that the
> writ of mandamus authorized in the last sentence of this statute

replaces the application procedure in Tenn. Code Ann. § 8-20-101(2). Tenn. Code Ann. § 8-20-120 merely codifies existing case law with the exception of the prohibition against adopting a budget decreasing the number or salaries of the sheriff's employees without the sheriff's consent.

. . . .

While county executive bodies are required to adopt an annual budget, they are not required to approve all of the requests submitted by their local departments and agencies. Their actions on these requests require balancing the county's priorities with the availability of funds. Decisions involving the budget are legislative decisions, and legislative decisions require judgment and discretion. *Lotspeich v. Mayor & Aldermen of Morristown*, 141 Tenn. 113, 121, 207 S.W. 719, 721 (1918). Thus, courts should avoid using the writ of mandamus to interfere with the county legislative body's budgetary decisions *unless the legislative body is under some legal obligation to appropriate funds*.

Like other local officials, sheriffs do not have the right to insist upon funds for additional personnel *until a court has determined that the personnel are necessary for the discharge of the sheriff's statutory duties*. Thus, the writ of mandamus authorized by Tenn. Code Ann. § 8-20-120 is the same writ that has been recognized by the courts for many years. It can only be sought after the sheriff has gone through the local budget process and the application procedure required by Tenn. Code Ann. § 8-20-101(2).

*Jones v. Mankin*, 1989 Tenn. App. LEXIS 325, at *9–12 (Tenn. Ct. App. May 5, 1989) (emphasis added). "In short, 'the writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and relator has no other specific or adequate remedy.'" *State v. Ayers*, 756 S.W.2d 217, 221 (Tenn. 1988) (quoting *State ex rel. Ragsdale v. Sandefur*, 389 S.W.2d 266, 269 (Tenn. 1965)).

"[W]e cannot review a statute in a vacuum." *In re Estate of Luck*, No. W2004-01554-COA-R3-CV, 2005 Tenn. App. LEXIS 332, at *6 (Tenn. Ct. App. June 7, 2005) (no perm. app. filed). "The language employed [by the legislature] must be considered in the context of the entire statute, and the component parts of a statute should be construed, if possible, consistently and reasonably." *State v. Goodman*, 90 S.W.3d 557, 564 (Tenn. 2002) (citations omitted); *see also Marsh v. Henderson*, 424 S.W.2d 193, 196 (Tenn. 1968).

-24-

Sheriff Dorning's ability to file for a writ of mandamus is necessarily limited by the statutory scheme enacted by the legislature. Stated differently, pursuant to the express language in section 8-20-101 *et seq.* of the Tennessee Code, a sheriff is only authorized to seek funding for additional personnel and salary increases. Thus, as we have previously interpreted the statutes at issue, a sheriff may only seek a writ of mandamus to compel a county legislative body to appropriate the funds authorized by section 8-20-101 *et seq.* of the Tennessee Code, which, as Sheriff Dorning concedes, only applies to personnel and their salaries. As we held in *Jones*, it is only after a court determines that a county legislature should provide additional funding for personnel and salaries that a sheriff obtains a legal right to those funds. *See Jones*, 1989 Tenn. App. LEXIS 325, at *11. In turn, the legislature provided sheriffs with a mechanism to secure those funds, and only those funds, which section 8-20-101 *et seq.* of the Tennessee Code is designed to provide. Sheriff Dorning would seek to have this Court interpret a single sentence in section 8-20-120 of the Tennessee Code in isolation. This we decline to do.

While we do not quarrel with the logic behind the trial court's decision on this issue, we must nevertheless reverse that decision because it cannot be supported by the unambiguous statutory language chosen by our legislature and the case law applying that language. Accordingly, we reverse the trial court's decision to authorize funding for new vehicles for Sheriff Dorning's department.

## V.
### CONCLUSION

We affirm the trial court's decision to authorize the funding of two additional corrections officers; reverse the trial court's decision to authorize the funding of an additional administrative assistant; affirm the trial court's authorization of additional funding for salary increases with the modification that any reference to the salary to be paid to the additional administrative assistant be stricken from the order; reverse the trial court's decision making the salary increases retroactive and hold that they are to take effect as of September 3, 2004, the date of the court's order; and reverse the trial court's authorization of funding for the purchase of vehicles.

As both parties have partially prevailed on appeal, costs of this appeal are to be taxed one-half to the Appellant, Ametra Bailey, and her surety, and one-half to the Appellee, William Dorning, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE