**Billy R. SMITH, County Sheriff for Montgomery County, Tennessee, Plaintiff/Appellee,**

v.

**Joel PLUMMER, County Executive for Montgomery County, Tennessee, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 31, 1992.

Application for Permission to Appeal Denied by Supreme Court May 18, 1992.

Larry B. Watson, Watson, Atkins and Hay, Clarksville, for plaintiff/appellee.

Edd S. Hurt, Jr., Hurt & Patrick, Clarksville, for defendant/appellant.

## OPINION

TODD, Presiding Judge.

The defendant, County Executive for Montgomery County, has appealed from the judgment of the Trial Court authorizing the employment of additional staff by the Sheriff of Montgomery County.

On June 28, 1990, the Sheriff filed his petition under the authority of T.C.A. § 8-20-101(2) asserting:

3. ... To insure the safe and efficient operation of the jail the Petitioner will require fifteen extra jailors to be paid $18,670.67 each and will further require one maintenance man at the annual rate of $18,670.60.

4. That in order to properly perform the duties of his office the assistant employed by your Petitioner must undergo extensive and lengthy training and on the job experience. Further, they are also required to be certified pursuant to Tennessee Code Annotated.

5. That in order to properly perform the duties of his office it is necessary and proper that the Petitioner should employ additional road deputies, a total of five, three of which shall be paid $19,140.16 each, two of which will be paid $18,-670.60 each and will require one new criminal investigator to be paid $21,-085.48. ...

The petition prayed:

2. That a hearing be held as early as possible and the Court allow the Petitioner this application authorizing the Petitioner to employ the requested number of deputies, jailors, a maintenance man and a criminal investigator, and allow him to pay the salaries as hereinabove set out.

3. Petitioner requests a reasonable fee for his solicitor of record.

4. That he have such other, further and general relief to which he may be entitled.

The response of defendant denies the need for the requested authorization.

On March 29, 1991, the Trial Court entered an order stating:

... [I]t is the Court's opinion that the additional jail staff requested by the Petitioner, at the compensation requested, is reasonable and necessary. Accordingly, the relief requested in Paragraph 3 of the Petition filed in this case is granted. (15 jailers and 1 maintenance man).

... It is further ordered by the Court that the jailers authorized by this Order shall be properly certified pursuant to the requirements of the Tennessee Correctional Institute, referred to in this hearing as "TCI".

In this case, the Petitioner has requested additional "road deputies", a total of five, and one new criminal investigator. ... It is the opinion of the Court that the Petitioner has proven by a preponderance of the evidence that additional staff is necessary at this time in order for the Sheriff's Department to properly serve the law enforcement needs of the people of Montgomery County, Tennessee. Accordingly, the relief requested by the Petitioner is (sic) Paragraph 5 of the Petition is granted to this extent:

The Petitioner is authorized to add to his staff four "road deputies", all of whom shall be certified police officers under the appropriate sections of the Tennessee Code pertaining thereto, and one of which shall assume court officer duties. Also, one new criminal investigator shall be added to the Petitioner's staff. The salaries set out in the Petitioner's request are deemed reasonable by this Court.

It is the Court's opinion that a reasonable fee for Petitioner's attorney is authorized by statute and should be paid. Counsel for the Petitioner is ordered to file an Affidavit with regard to his time and expenses associated with this litigation, and after reviewing said Affidavit, the Court shall set an appropriate fee in a Supplemental Order.

On August 9, 1991, the Trial court entered the following order:

... Larry B. Watson shall have a judgment in the sum of $8,248.75 which represents attorney's fees, court reporting expense and reimbursement of filing fees as herefore set out.

■ On appeal, the defendant presents three issues which question (1) the grant of authority for additional road deputies and criminal investigator; (2) the grant of authority for additional jailors and maintenance man. Defendant insists correctly that, under the cited statute, authority may be properly granted only upon a showing of necessity, that is, that the Sheriff is unable to perform his statutory duties with presently authorized assistants and that the requested additions are necessary to enable him to perform such duties.

T.C.A. § 8–20–101 provides in pertinent part as follows:

**Application for authority to employ deputies.**—Where any one (1) of the clerks and masters of the chancery courts, the county clerks and the clerks of the probate, criminal, circuit and special courts, county trustees, registers of deeds, and sheriffs cannot properly and efficiently conduct the affairs and transact the business of his office by devoting his entire working time thereto, he may employ such deputies and assistants as may be actually necessary to the proper conducting of his office in the following manner and under the following conditions, namely:

....

(2) The sheriff shall in like manner make application to the judge of the circuit court in his county, for deputies and assistants, showing the necessity therefor, the number required and the salary that should be paid each; provided, that, in the counties where criminal courts are established, the sheriff shall apply to a judge of such criminal court;

....

T.C.A. § 8–20–103 provides:

**Requirements for authorization.**—(a) No deputy or deputies nor assistants shall be allowed to any office, unless the officer himself is unable to discharge the duties of the office by devoting his entire working time thereto, except field deputy sheriffs.

(b) In case the officer is incapacitated from any cause to perform the duties of his office, one (1) person working in the place of the officer himself shall neither be considered nor paid as a deputy or assistant.

■ Sheriffs are constitutional officers. *Constitution of Tennessee*, Art. VII § 1 and authorities annotated thereunder.

The duties of sheriffs are not prescribed by the Constitution and were originally defined by common law. *State, ex rel Thompson v. Reichman*, 135 Tenn. 653, 188 S.W. 225, 135 Tenn. 685, 188 S.W. 597 (1916).

Most duties of sheriffs are now prescribed by statute. *Metropolitan Government of Nashville and Davidson County v. Poe*, 215 Tenn. 53, 383 S.W.2d 265 (1964).

■ The statutory duties of a sheriff now include four classes: (1) serving process, T.C.A. § 8–8–201(1)(4–32); (2) attending the courts, T.C.A. §§ 5–7–108, 8–8–201(2), 16–15–601, 37–1–213; (3) operating the jail, T.C.A. §§ 8–8–201(3), 8–8–221, 41–2–108, 41–4–101; (4) keeping the peace, T.C.A. §§ 8–8–213, 38–3–102.

The duties of a sheriff may be classified according to the manner of his compensation therefor, to wit: (1) duties imposed and defined by statute with statutory compensation, and (2) common law or "ex officio" duties (even though now provided by statute) for which duties there is no specified fee or charge. *State ex rel, Windham v. LaFever,* Tenn.1972, 486 S.W.2d 740.

The compensation of a sheriff for ex officio services is to be determined by the county legislative body. *Shanks v. Hawkins,* 160 Tenn. 148, 22 S.W.2d 355 (1929); T.C.A. § 8–24–111.

■ The authority of the courts to authorize expense of conducting the conduct of a sheriff's office is limited to those activities related to the performance of statutory duties for which the collection of a fee is authorized. That is to say, the courts have power to authorize the sheriffs to spend monies collected in fees for performing statutory duties for the expenses, including personnel, necessary for the performance of such duties.

It does not appear from the record that the "assistant employed by petitioner" is engaged in a statutory duty. However, the Trial Court did not grant the request in this connection.

### –Road Deputies and Investigator–

The duties of the requested additional "road deputies" and "criminal investigator" are not subject to classification as statutory or ex officio. The Sheriff testified that road deputies performed the following duties: (1) answer calls requiring canine assistance, (2) back up city police officers and (3) serve civil and criminal warrants that the day shift is unable to serve. It appears that the first two activities are ex officio duties and the third is statutory.

The Chief Deputy testified that the duties of road deputies include: (1) occasional transport, (2) serving criminal warrants, (3) occasionally serving subpoenas, and (4) canine back up for city police. It appears that these 4 duties are a mixture of statutory and ex officio duties. It appears that the first and fourth activities are

ex officio duties and the second and third are statutory.

■ Although not specified, the obvious primary duty of "road deputies" is to patrol the roads. The sheriff testified of his desire to reduce response time for answering calls for help. While this is commendable and desirable, the peace-keeping duties of the Sheriff do not include regular patrol of all highways and reducing response time for responding to calls. *State ex rel, Windham v. LaFever,* Tenn.1972, 486 S.W.2d 740. Financing for such activities cannot be ordered by the Courts, but must be obtained from the county legislative body.

The Sheriff has understandably chosen to utilize his road deputies for a variety of duties, some statutory and some ex-officio, and, in so doing, has rendered himself unable to show the necessity needed for additional road personnel to perform any statutory duty.

No evidence is cited or found to show that any statutory duty cannot be performed by the Sheriff with presently authorized personnel.

■ While the duty of the Sheriff to "keep the peace" includes the duty to prevent and suppress crime of which he has notice, *State ex rel, Thompson v. Reichman,* 135 Tenn. 653, 188 S.W. 225 (1916), no statute is cited or found to require a sheriff to maintain a criminal investigator. Such officials are ordinarily a part of the staff of the prosecuting attorney or provided in a budget for ex officio duties.

No evidence is found to support judicial approval of additional "road deputies" or investigator.

### –Jailers and Jail Maintenance Man–

The Sheriff has a statutory duty to operate the jail for which he is authorized to charge and collect fees. Consequently, the Trial Court has authority to approve the expenditure of such fees for necessary expense of doing so, including personnel.

The plaintiff-Sheriff's office is the subject of a pending suit in the Federal Dis-

trict Court wherein a consent order has been entered containing the following:

(2) STAFFING: Since the entry of the partial consent decree of January 12, 1983, in this matter which required the defendants to maintain a staff of at least eighteen (18) full time non-kitchen personnel, the average daily population of the jail has increased substantially and the capacity of the jail to house the increased population of inmates has likewise increased substantially. The jail staff has increased in number to fifty-five (55) full time non-kitchen personnel, which number does not include two (2) deputies whose duty it is to supervise the work detail. Because of the changes in average daily inmate population, jail capacity and the architectural configuration of the jail since the entry of the partial consent decree of January 12, 1983, defendants agreed to and did seek the guidance of an outside expert in the field of law enforcement and corrections (particularly local jail management) with regard to the question of appropriate staffing numbers and patterns for the jail as it will exist after the present renovation. To that effect, Mr. L. Cary Bittick of Forsyth, Georgia, was employed to conduct and did conduct a staffing analysis of the Montgomery County Jail and has generated a report dated January 29, 1990 (a copy of which is attached) which defendants agree to abide by to the best of their ability. Defendant Plummer agrees to recommend to the Montgomery County Commission that sufficient staff be provided for in the Sheriff's Department budget in order to comply with Mr. Bittick's report. In the event that the Montgomery County Commission does not provide sufficient funding for and thereby authorize the hiring of enough additional personnel to conform to Mr. Bittick's report, plaintiffs shall have the right to move the Court for a hearing on this issue.

The report of the jail expert attached to said order sets out a plan for renovation and staffing of the jail. The staff needs of the renovated jail are set out in the report.

The defendant testified as follows:

Q. Now, there's a paragraph in here, it says on Page 3 at the top of the page, which says, "Which Defendants agree to abide by to the best of their ability. Defendant Plummer agrees to recommend to the Montgomery County Commission that sufficient staff be provided for in the sheriff's department budget in order to comply with Mr. Bittick's report."

Mr. Plummer, in reference to this paragraph, we have seen the budgets and we saw what the sheriff had requested, which was an additional 1.4 people, I believe, over the 13.6 or 13.7, whatever Mr. Bittick recommended. And all those line items were stricken, is that correct?

A. Yes.

Q. And what have you done, to the best of your ability, to comply with this order?

A. Well, the jail is not completed even today. It's still not being staffed and we don't know when we—it's just guess work when we'll get into it.

Q. So if it is completed today, then, you're going to say you would recommend the 13.7?

A. When the jail is completed and it's occupied by prisoners, yes, I'll comply with this.

Q. Okay. So you're saying that the reason why you haven't done it to date is simply because the jail is not open.

A. And, naturally, it's not—it's not occupied when it's not open, that is correct.

. . . .

Q. You were asked on cross-examination with regard to the implementing of the federal court order of the Bittick report. It's my understanding that and I believe you have testified that the jail is not complete at this time; is that correct?

A. Yes, that's correct.

Q. Mr. Plummer, do you intend to recommend to the County Commission the implementation of the federal court order and the Bittick report when the jail is complete and the prisoners are there?

. . . .

THE WITNESS: Yes.

No evidence is cited or found to indicate that the renovated jail is ready for occupancy and utilization of the staff set out in the report to the Federal Court.

In view of the testimony of the County Executive, quoted above, it appears that the Sheriff, by this suit, is seeking approval for future employment of additional personnel when the renovated jail is occupied and used. It also appears that the Sheriff's request to the County Commission for funds for additional personnel was denied only because it was premature.

Some difficulty is inherent in harmonizing the enlargement of facilities and increase of personnel. However, the Courts cannot be expected to approve an increase in personnel until the actual need for same is proven.

■ If the Sheriff had testified that renovations were complete and the use of the renovated building could not begin without specified additional personnel, the Trial Court would have been justified in authorizing such additional personnel on the date of occupation and use of the renovated building. However, such evidence is not found in this record, and the order of the Trial Judge is not supported by the evidence.

The disposition of this appeal is not a roadblock to progress, it is a beacon light to the orderly path of progress. By timely and proper application and presentation of proof to the Trial Court and/or the County Commission, the Sheriff will doubtless be able to secure approval of the employment of adequate personnel for the performance of his duties, both statutory and ex officio.

The judgment of the Trial Court is reversed and vacated, and the suit is dismissed. Costs of this appeal are taxed against the plaintiff. The cause is remanded for the collection of costs and any other necessary proceedings.

Reversed, dismissed and remanded.

LEWIS and KOCH, JJ., concur.